MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@hpl.law
ELODIE BARDON (SBN: 352856)
E-Mail: Elodie@hpl.law
**HANKIN PATENT LAW,**
A Professional Corporation
11414 Thurston Cir
Los Angeles, CA 90049
Tel: (310) 979-3600

Attorneys for PLAINTIFF,
**MMAS RESEARCH LLC**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company, <br><br> Plaintiff <br><br> v. <br><br> JIMRO Co., Ltd.; Medical Corporation Tesshokai Japan; University of Tokyo; Nihon University School of Medicine; Mitsubishi Tanabe Pharma Corporation; DOES 1 through 10, inclusive, <br><br> Defendants. | CASE No. 2:25-cv-06329 <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Breach of Contract <br> 2. 17 U.S.C. § 501 – Infringement of Copyright <br> 3. Misappropriation of Trade Secrets under the Defend Trade Secrets Act (DTSA) and State Law <br><br> **<u>DEMAND FOR JURY TRIAL</u>** |

1    Plaintiff MMAS RESEARCH LLC ("MMAS Research," or "Plaintiff") for its

2    claims for relief against Defendants JIMRO Co., Ltd (JIMRO), Medical Corporation

3    Tesshokai (Kameda Hospital), University of Tokyo (UT), Nihon University School of

4    Medicine (Nihon), Mitsubishi Tanabe Pharma Corporation (MTPC), and DOES 1

5    through 10, inclusive ("DOES") (collectively herein "Defendants"), alleges as follows:

6                    **JURISDICTION AND VENUE**

7        1.    This action arises, in part, under the 17 U.S.C. § 501 –Infringement of

8    Copyright including all sections created or amended by the Digital Millennium

9    Copyright Act conferring federal question jurisdiction under 17 U.S.C. §101, and

10   supplemental jurisdiction on Plaintiff's state law claims under 28 U.S.C. §1367.

11       2.    This action arises, in part, under the DTSA 18 U.S.C. § 1836 including all

12   sections created or amended by the Defend Trade Secrets Act, conferring federal

13   question jurisdiction under 18 U.S.C. § 1836.

14       3.    Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C.

15   §1332, as the amount in controversy exceeds $75,000.00 and there is a complete

16   diversity of citizenship between the Parties.

17       4.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because:

18   (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred

19   in this District; (b) the unlawful acts of Defendants complained of herein have been

20   committed within this District and have, had, or will have had effect in this District; (c)

21   the written agreements identified and described more thoroughly below were entered

22   into by the Parties in this District; and (d) the written agreements identified and

23   described more thoroughly below, by their terms, stipulated to jurisdiction and venue

24   in this District.

25       5.    Venue is also proper in this District pursuant to 28 U.S.C. §1391(c)(3)

26   because one or more Defendants are amenable to personal jurisdiction in this District.

27                       **THE PARTIES**

28       6.    Plaintiff, MMAS RESEARCH LLC (MMAS) is a Washington limited

liability company in good standing.

7.    Steven Trubow (Trubow) is the CEO of MMAS.

8.    Plaintiff is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright").

9.    On information and belief, Defendant JIMRO Co., Ltd (JIMRO) is located at 351-1 Nishiyokote-machi, Takasaki-shi, Gunma 370-0021, Japan.

10.    On information and belief, Defendant Medical Corporation Tesshokai (Kameda Hospital) is located at 929 Higashi-cho, Kamogawa City, Chiba Prefecture, Japan 296-8602.

11.    On information and belief, Defendant the University of Tokyo (UT) is located at 7 Chome-3-1 Hongo, Bunkyo City, Tokyo 113-8654, Japan.

12.    On information and belief, Defendant Nihon University School of Medicine (Nihon) is located at 30-1, Oyaguchi Kami-cho, Itabashi-ku, Tokyo 173-8610.

13.    On information and belief, Defendant Mitsubishi Tanabe Pharma Corporation (MTPC) is located at 3-2-10 Dosho-machi, Chuo-ku, Osaka 541-8505, Japan.

14.    Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10, inclusive (the "Doe Defendants," and collectively with the above-named defendants, the "Defendants"), are other parties not yet identified are the subject of this lawsuit. The true names, whether corporate, individual, or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues defendants by such fictitious names, and will seek leave to further amend this complaint to show their true names and capacities when their identities have been determined.

15.    Plaintiff is informed, believes, and thereupon alleges that Doe Defendants were, and are, in some manner responsible for the actions, acts, and omissions alleged, and for the damage caused by Defendants and are, therefore, liable for the damage

caused to Plaintiff.

16.     Plaintiff is informed, believes, and thereon alleges that Defendants did, at all material times, foresee the nature and extent of the probable consequences of their acts in proximately causing said damage to Plaintiff.

17.     Plaintiff is informed, believes, and thereon alleges that, at all relevant times, Defendants controlled and participated in the acts or conducted allegedly herein.

## FACTS RELEVANT TO ALL ALLEGATIONS

18.     The Ninth Circuit Court of Appeals issued a memorandum on March 13, 2024, in case No. 23-55202 confirming that MMAS Research owns the Copyright to the Morisky Widget, stating:

> "The district court erred in concluding that MMAS lacked standing to sue for copyright infringement. The district court found that a 2020 preliminary settlement agreement (CR2A) from a separate lawsuit between MMAS and Dr. Donald Morisky transferred the Morisky Widget from MMAS to Dr. Morisky. But that agreement—which simply outlined terms MMAS and Dr. Morisky "desire[d] to consent and agree to" sometime in the future—was never finalized. thus, thus, it never transferred its copyright and remains the registered owner of the Morisky Widget. Similarly, because the agreement was a private contract between Dr. Morisky and MMAS, and because it was never finalized, it was not an abandonment of MMAS's right to sue Charité for copyright infringement."

19.     To protect the integrity of the Morisky Widget and protect against counterfeiting, infringing, or unauthorized use, Plaintiff filed for and obtained a Certificate of Registration for the Morisky Widget from the United States Copyright Office.

20.     The Morisky Widget copyright, as alluded to above, includes the source code for the Morisky Widget, which itself includes the Morisky Widget diagnostic assessments, MMAS-4, MMAS-8.

21.     Plaintiff has complied in all respects with the Copyright Act and Digital Millennium Copyright Act, as well as all other laws governing copyrights, as to the Morisky Widget copyright.

22.     Plaintiff has been, and still is, the author and exclusive holder of all rights, title, and interest in, and to, the copyrights to the Morisky Widget.

23.     The Morisky Widget diagnostic assessments and the Morisky Widget copyright are vital to ensure that third-party use of the Morisky Widget source code is authorized by Plaintiff and used in compliance with Plaintiff's trade secret scoring and coding in the Morisky Widget.

24.     Plaintiff permits the use of the Morisky Widget, licensing its copyright and diagnostic assessments, only through a licensing program that includes training and certification on the use of the Morisky Widget MMAS-8 and MMAS-4.

25.     Plaintiff grants clinics, practitioners, and similar organizations, entities, and individuals limited-use perpetual licenses for the Morisky Widget that impose restrictions on the use and disclosure of the trade secret scoring and coding of the Morisky Widget MMAS 4/8 diagnostic assessments.

26.     All Morisky Widget licensees are required to score and code MMAS-4, and MMAS-8 tests in the Morisky Widget and to be trained and certified on the use of the Morisky Widget before administering it to patients.

27.     The MMAS-8 and MMAS-4 Widget medication and condition specific diagnostic assessments consist of a list of questions that distinguish between the underlying cause of non-adherence as being intentional or unintentional allocate numerical value for each. The MMAS-8 scores generated were based on intentional and unintentional non-adherence, to determine adherences based on intentional cause for not taking their medications or unintentional cause such as cognitive impairment, worries about the consequences of taking them, or loss of motivation to self-care.

A.     **Kameda Hospital University of Tokyo**

28.     On information and belief, on July 19, 2017, Medical Corporation

Tesshokai Japan (Kameda) and MMAS Research LLC (MMAS) signed a perpetual Morisky Widget License Agreement.

29.    On information and belief, Kameda fully understood and agreed that Plaintiff holds all intellectual property rights in the Morisky Widget software, the Morisky Medication Adherence Scales, the MMAS-8, the MMAS-4, and all MMAS translations and that Licensor is authorizing uses of Licensor Work only as described in this agreement.

30.    On information and belief, Kameda fully understood and agreed that this license is non-transferable outside of the Medical Corporation Tesshokai but can be used by any Medical Corporation Tesshokai clinician, physician, nurse, pharmacist or staff member with the proper Morisky Widget training and certification-including training and certification by the Medical Corporation Tesshokai Widget administrator.

31.    On information and belief, Kameda fully understood and agreed Kameda can offer free sub-licenses to any health care organization outside of the Medical Corporation Tesshokai anywhere in Japan, if Licensee & Licensor agrees on the terms for training and certification and the pre-payment of tests by the Sub-Licensee.

32.    On information and belief, by special arrangement, Kameda can use paper MMAS questionnaires, but must score, code, and report the results through Morisky Widget.

33.    On information and belief, the Kameda Morisky Widget license specified that translations of the copyrighted MMAS-8 will not be granted for any unauthorized use.

34.    On information and belief, the Kameda Morisky Widget license required Defendant Kameda in any presentations and publications to cite the use of Licensor Works or results there from in a manner appropriate to the context and consistent with academic/scholarly norms.

35.    MMAS Research LLC traveled to Kamogawa city, Japan in 2017 to train and certify Kameda Hospital pharmacists and clinicians, and researchers on the correct

use of the trade secret Morisky Widget software to administer, score, code, and analyze Morisky Widget MMAS-8 tests. MMAS Research LLC trained and certified 9 people on the Morisky Widget as shown below.



36.    In May 2025, Plaintiff became aware that Defendants Kameda Hospital and the University of Tokyo conducted a study entitled Effectiveness of Multi-disciplinary Medical Education Team for Heart Failure Patients To Improve Their Medication Adherence (Accused Study) beginning on February 7, 2018, and completing it on February 14, 2020.

37.    On information and belief, Defendant the University of Tokyo was not licensed to conduct the study, nor were they trained and certified to score and code MMAS-8 tests using the Morisky Widget trade secret scoring and coding criteria.

38.    On information and belief, Defendant Kameda breached their license by transferring the Morisky Widget license and a MMAS-8 Japanese translation to Defendant the University of Tokyo, the co-sponsor of the Accused Study.

39.    In May 2025, Tomoaki Hashimoto, formerly a Pharmacist at Kameda

Hospital and the Chief Investigator for the Accused study met with the Plaintiff and his former supervisor at Kameda Hospital, Osamu Yasumuro, Chief of the Pharmacy Room at Kameda Hospital.

40.    On information and belief, Tomoaki Hashimoto told Plaintiff and Yasumuro that when they administered the MMAS-8 to patients in the Accused Study, Tomoaki stated that pharmacists administering MMAS-8 paper tests to patients wanted to provide immediate feedback to patients, so the MMAS-8 tests were scored and coded manually on the spot to give patients immediate feedback on how to improve adherence to their medications. Tomoaki freely admitted that MMAS-8 tests were scored and coded outside of the Morisky Widget.

41.    On information and belief, Tomoaki Hashimoto told Plaintiff and Yasumuro that Kameda Hospital shared the Morisky Widget MMAS-8 scoring and coding criteria with the University of Tokyo investigators in the Accused study without the permission of the Plaintiff.

42.    On information and belief, Defendants Kameda Hospital and the University of Tokyo misappropriated Morisky Widget trade secret scoring and coding criteria when conducting the Accused Study.

43.    On information and belief, in the Accused Study, Defendant Kameda breached their Morisky Widget license by scoring and coding MMAS-8 test outside of the Morisky Widget software.

44.    On information and belief, Defendant Kameda breached their license by failing to cite the use of the Morisky Widget in a manner appropriate to the context and consistent with academic/scholarly norms on the Japanese UMIN Clinical Trials Registry Website.

45.    On information and belief, Defendant Kameda, in breach of their license and in violation of the Defense Trade Secrets Act, transferred to Defendant the University of Tokyo trade secret Morisky Widget MMAS-8 scoring and coding criteria.

46.    On information and belief, Defendant the University of Tokyo

administered scored and coded MMAS-8 tests in the Accused Study without the proper training and certification.

47.    On information and belief, Defendants Kameda Hospital and the University of Tokyo administered scored and coded MMAS-8 tests outside of the Morisky Widget that were subject to error.

48.    On information and belief, Japan's Clinical Trials Website reported that due to incorrect of the MMAS-8 accurate results in the Accused Study could not be shown.

49.    On information and belief, Defendants misuse of the Morisky Widget, the lack of training and certification of Defendant the University of Tokyo, the Defendants misappropriation of trade secret MMAS-8 scoring and coding criteria, and Defendants manual hand scoring and coding of MMAS-8 paper tests raised serious doubts about the validity of the Accused study and led to its termination.

50.    On information and belief, Defendants negligent use of invalid MMAS-8 data could have seriously harmed the heart patients in the Accused Study.

**B.    JIMRO**

51.    On March 28, 2018, Defendant JIMRO representative Yoshimi Tsuchimoto wrote to Plaintiff:

"Now everything has been cleared to us, and we fully understand the Widget's marvelous functionality which automatically calculates and returns 'intentional" and "non-intentional" scores to us only by uploading the raw data which a patient answers 8 questions of the MMAS-8 questionnaire.    Following our further internal discussion, we have concluded to accept your kind proposal about retroactive license agreement, in which paper-based MMAS-8 questionnaires would be used by patients as before, and the scores would be uploaded to the Widget by JIMRO every month. We would like to proceed with your proposed retroactive and corrective licensing agreement covering the period from

January 13, 2017."

52.    On information and belief, Defendant JIMRO and Plaintiff executed a perpetual Morisky Widget license on or around May 7, 2018.

_Signature of Steven Trubow, MMAS Research    5/9/2018    Date Signed_

_Hideyuki Baba    5/7 /2018_

Signature of JIMRO, Date Signed

53.    On May 8, 2018, Defendant JIMRO representative Ohta Yoshikazu wrote to Plaintiff "We are using the MMAS-8 for patients with hypertension in our clinical study in Japan and Korea."

54.    On information and belief, Defendant JIMRO promised to re-score and re-code the MMAS-8 tests administered in the Japanese and Korean hypertension study retroactive to January 1, 2017, in the Morisky Widget after JIMRO was trained and certified.

55.    On information and belief, Defendant JIMRO was trained and certified on the Morisky Widget in Tokyo on August 16, 2018.

| Otsuka JIMRO | | 600 | | 3 | 10 |
|---|---|---|---|---|---|
| strubow_otsuka | trubow1+otsuka@gmail.com | | 2018-08-12T13:40:56.116Z | | 6 |
| Ohta | ohtay@otsuka.jp | | 2018-08-16T06:10:04.277Z | | 5 |
| Tsuchimoto | tsuchimotoy@otsuka.jp | | 2018-08-16T06:12:03.239Z | | 2 |

56.    On information and belief, Defendant JIMRO has scored and coded only 7 MMAS-8 tests in the Morisky Widget as of June 1, 2025.

57.    On April 13, 2025, Plaintiff wrote to Defendant JIMRO's representative Ohta Yoshikazu to inform him that JIMRO has scored and coded only 10 tests in the Morisky Widget. The MMAS test data purchased by JIMRO is the exclusive property of JIMRO. **However**, MMAS Research reserved the right to inspect all MMAS test results in cases of administrative or scientific misconduct.

58.     On April 28, 2025, Daisuke Hoshino, JIMRO's counsel, wrote to Plaintiff: "Dear Mr. Trubow. We have received your message below. As mentioned in my previous email, our legal counsel has informed us that there is ongoing litigation between MMAS Research and Dr. Morisky concerning the MMAS license and copyright ownership. Given that the original license between Dr. Morisky and MMAS Research is disputed, at this time we are unable to discuss substantial or procedural issues regarding MMAS with you."

59.     Defendant JIMRO is in breach of the JIMRO Morisky Widget license for refusing to allow Plaintiff to inspect all MMAS Results.

60.     On information and belief, Defendant JIMRO is in breach of their Morisky Widget license for failing to score and code all MMAS tests in the Morisky Widget.

## C.     NIHON UNIVERSITY MEDICAL SCHOOL

61.     On Defendant Nihon University School of Medicine published an article in January 2024 in the Journal of Arrhythmia, entitled "Clinical implication of the patient's disease awareness and adherence to medications in patients undergoing a trial fibrillation ablation", referred to as "Accused Study".

https://onlinelibrary.wiley.com/doi/full/10.1002/joa3.12965

62.     The Journal of Arrhythmia is published by John Wiley & Sons Australia which is owned by John Wiley & Sons, Inc., based in the United States.

63.     On information and belief, Defendant Nihon University medical school published the Accused Study without obtaining permission or license from Plaintiff.

64.     On information and belief, Defendant Nihon University Medical School used a counterfeit MMAS-8 scoring and coding criteria in the Accused Study which would have invalidated the MMAS-8 results. Defendant Nihon University Medical School wrote in the Accused Study: "The median MMAS-8 score was 6. Therefore, we defined ≥6 points as good medication adherence, and <6 points as poor medication adherence."

1 https://onlinelibrary.wiley.com/doi/full/10.1002/joa3.12965

2 65.    On information and belief, Defendant Nihon University Medical School
3 willfully committed at least 300 infringements of the Morisky Widget copyright. On
4 information and belief, Plaintiff alleges that on September 22, 2017, MTPC and MMAS
5 Research LLC executed a perpetual Morisky Widget License.

6 **D.    MTPC**

7 66.    On November 7, 2017, MMAS Research traveled to MTPC in Osaka Japan
8 to train and certify 25 MTPC employees on the Morisky Widget trade secret MMAS-8
9 scoring and coding software algorithms.

| 5 | Mitsubishi Tanabe Pharma Corporation | | 1000 | 5 | 83 |
|---|---|---|---|---|---|
| | sasaki.yasuyuki@md.mt-pharma.co.jp | sasaki.yasuyuki@md.mt-pharma.co.jp | | 2017-11-05T19:22:36.086Z | 40 |
| 7 | user 1 | mailto:koujin.yoshito@mu.mt-pharma.co.jp | | 2017-11-07T00:42:18.485Z | 0 |
| 3 | user 14 | tatsuki.yoshihiko@mp.mt-pharma.co.jp | | 2017-11-07T00:45:22.725Z | 0 |
| 3 | user 5 | mailto:hashimoto.toshio@mm.mt-pharma.co.jp | | 2017-11-07T00:46:50.465Z | 0 |
| 3 | user 13 | mailto:inagaki.masaya@mm.mt-pharma.co.jp | | 2017-11-07T00:48:29.045Z | 0 |
| 1 | user 15 | mailto:takesaki.kazumi@mp.mt-pharma.co.jp | | 2017-11-07T00:52:51.309Z | 0 |
| 2 | user 4 | matsuda.hiroaki@mk.mt-pharma.co.jp | | 2017-11-07T00:54:28.237Z | 0 |
| 3 | user 9 | iida.mitsutaka@ma.mt-pharma.co.jp | | 2017-11-07T01:01:23.444Z | 0 |
| 1 | user 10 | yoshida.kengo@mc.mt-pharma.co.jp | | 2017-11-07T01:02:40.411Z | 0 |
| 5 | user 6 | wakamoto.reiko@ma.mt-pharma.co.jp | | 2017-11-07T01:17:32.617Z | 0 |
| 3 | user 16 | koujin.yoshito@mu.mt-pharma.co.jp | | 2017-11-07T01:23:05.104Z | 1 |
| 7 | user10 | hiroaki-m@jttk.zaq.ne.jp | | 2017-11-07T01:57:31.243Z | 7 |
| 3 | user11 | reiwakamoto@gmail.com | | 2017-11-07T01:59:53.057Z | 5 |
| 3 | user 23 | inagaki.masaya@mm.mt-pharma.co.jp | | 2017-11-07T02:09:38.105Z | 3 |
| 3 | user14 | koujinyoshito@gmail.com | | 2017-11-07T02:14:36.257Z | 11 |
| 1 | user 25 | hashimoto.toshio@mm.mt-pharma.co.jp | | 2017-11-07T02:19:25.183Z | 1 |
| 2 | user 21 | iida.6s.iphone@gmail.com | | 2017-11-07T05:00:06.730Z | 8 |
| 3 | user 26 | bjc0805@me.com | | 2017-11-07T05:03:58.780Z | 6 |
| 1 | user 30 | rjrpy817@icloud.com | | 2017-11-07T05:12:56.247Z | 7 |
| 5 | user 31 | iida.iphone.4s@ezweb.ne.jp | | 2017-11-07T05:15:00.686Z | 0 |

19 67.    On information and belief, MTPC fully understood and agreed that the
20 Morisky Widget was the exclusive property of Plaintiff and cannot be transferred
21 without the written permission of the Licensor, all MMAS-8 test must be scored and
22 coded in the Morisky Widget, and in case of scientific, administrative, or intellectual
23 property disputes MTPC agreed to the jurisdiction of the Los Angeles County,
24 California State, and United States Federal Courts, pursuant to the MTPC License.

25 68.    On February 8. 2020, Donald Morisky sent an email to MTPC, writing
26 "effective June 21, 2019, I, Donald E. Morisky, owner/developer, and licensor of the
27 copyrighted MMAS 4 and 8 have terminated/severed all ties with Steve
28 Trubow/MMAS Research."

69.     On information and belief, the purpose of Morisky email was to discredit Steven Trubow and MMAS Research LLC with MTPC.

70.     On information and belief, after MTPC received Morisky's email, MTC discontinued their use of the Morisky Widget, in breach of their Morisky Widget license.

71.     MMAS Research hired a lawyer, Kenneth Gross, who prepared a draft complaint against MTPC for breach of contract and unfair business practices.

72.     On November 8, 2020, Plaintiff and MTPC executed an Addendum to the 2017 MTPC Morisky Widget License to resume scoring and coding MMAS-8 tests in the Morisky Widget.

73.     On information and belief, the 2020 Addendum required MMAS Research to score and code 2505 MMAS-8 tests in the Morisky Widget and provide MTPC with an analysis of the results.

74.     On information and belief, in July 2022, MTPC received an email from Defendant Phillip Morisky with a letter attached from Morisky's attorney Christopher Austin that said that anyone who used the Morisky Widget would be sued for copyright infringement.

75.     On August 1, 2022, Frank West, the American based attorney for Defendant MTPC, sent an email to MMAS Research that suspended the MTPC Morisky Widget license until the copyright ownership of the Morisky Widget is finally resolved by the U.S. courts.

76.     On information and belief, MTPC suspension of their license contract was in breach of their Morisky Widget licenses because Defendant MTPC claimed that Plaintiff does not own the Morisky Widget copyright and suspended their Morisky Widget license without cause.

77.     On information and belief, after the United States Court of Appeals for the Ninth Circuit wrote: "MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget," MTPC refused to acknowledge the Plaintiff's

ownership of the Morisky Widget copyright and settle the breach of their Morisky Widget license.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(As to Defendants KAMEDA, JIMRO, MTPC)**

78.    MMAS Research realleges each allegation contained in the preceding paragraphs.

79.    This claim for relief for breach of contract is established by the prima facie elements of (1) existence of a valid contractual obligation, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages to plaintiff.

80.    A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant Kameda and Plaintiff MMAS Research LLC which permitted use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

81.    Defendant Kameda breached its Morisky Widget license by not scoring and coding all MMAS tests through the Morisky Widget.

82.    Defendant Kameda breached its Morisky Widget license by transferring its license to the University of Tokyo for the Accused Study.

83.    Defendant Kameda breached its Morisky Widget license by allowing clinicians and researchers from the University of Tokyo who were not trained and certified on the Morisky Widget to administer, score, and report MMAS-8 tests.

84.    Defendant Kameda breached its Morisky Widget license by failing to cite their Morisky Widget license for the Accused Study on the Japanese Clinical Trials website.

85.    A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant JIMRO and Plaintiff MMAS Research LLC which permitted the use of the Morisky Widget MMAS

assessments under specific conditions. These agreements constitute binding contracts under applicable law.

86. Defendant JIMRO breached its Morisky Widget license by not scoring and coding retroactive MMAS tests through the Morisky Widget.

87. Defendant JIMRO breached its license by not scoring and coding MMAS tests administered after the execution of their Morisky Widget license through the Morisky Widget.

88. Defendant JIMRO breached its license by disputing Plaintiff's ownership of their Morisky Widget license which stated: "The Licensee fully understands and agrees that the Morisky Widget software, is the exclusive property of Licensor and can't be licensed, divulged or distributed without the written permission of the Licensor."

89. A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant MTPC and Plaintiff MMAS Research LLC which permitted the use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

90. Defendant MTPC breached its license by disputing Plaintiff's ownership of their Morisky Widget license and the Morisky Widget copyright. Defendant MTPC perpetual Morisky Widget license stated Ownership: The Licensee fully understands and agrees that the Morisky Widget software, is the exclusive property of Licensor.

## SECOND CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101, *ET SEQ.*
**(As to Defendants Kameda, MTPC, Nihon, and the University of Tokyo)**

91. MMAS Research realleges each allegation contained in the preceding paragraphs.

92. At all times relevant hereto, MMAS Research was the owner of all copyright rights or rights to assert copyright claims for the Morisky Widget.

93. MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*., and all other laws governing copyright.

94.    By reason of the copyright infringements described below, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

95.    Plaintiff alleges Defendants Kameda, and the University of Tokyo violated 17 U.S.C. §501, *et seq*.

96.    MMAS Research is informed and believes and thereon alleges that Defendants have, without authorization, infringed the Morisky Widget copyright by using, copying, counterfeiting, distributing, or otherwise exploiting the same contrary to the limited-use licenses granted in the Medical Corporation Tesshokai Japan Morisky Widget License.

97.    MMAS Research is informed and believes and thereon alleges that the University of Tokyo has, without authorization, infringed the Morisky Widget copyright by exploiting the Morisky Widget MMAS-8 in the course of the Accused Study.

98.    The MMAS Research LLC granted Medical Corporation Tesshokai Japan a limited-use license to use the copyrighted Morisky Widget-generated MMAS tests ("Widget Tests") solely if they were scored and coded in the Morisky Widget by clinicians who were trained and certified on the Morisky Widget.

99.    Medical Corporation Tesshokai Japan administered, scored, coded, and reported MMAS-8 tests that were never scored and coded in the Morisky Widget.

100.    Not scoring the Widget Tests in the Morisky Widget violated that limited-use license to the underlying copyrights in the Widget Tests.

101.    MMAS Research is informed and believes and thereon alleges that Defendants without authorization, infringed the Morisky Widget copyrights by using, copying, counterfeiting, distributing, or otherwise exploiting the same in on the Japanese ClinicalTrials website.

102.    Defendants Medical Corporation Tesshokai Japan and the University of Tokyo willfully committed no fewer than 200 infringements of the MMAS Research

Widget Code copyright in the Accused Study.

103.   Defendant JIMRO violated 17 U.S.C. §501, *et seq*.

104.   MMAS Research is informed and believes and thereon alleges that Defendant JIMRO has infringed the Morisky Widget copyright by wrongfully terminating their Morisky Widget license and scoring and coding MMAS-8 tests.

105.   Defendant Nihon violated 17 U.S.C. §501, *et seq*.

106.   Defendant Nihon willfully committed at least 300 infringements of the Morisky Widget copyright.

107.   Defendant MTPC violated 17 U.S.C. §501, *et seq*.

108.   MMAS Research is informed and believes and thereon alleges that Defendant MTPC has infringed the Morisky Widget copyright by wrongfully terminating their Morisky Widget license and scoring and coding MMAS-8 tests.

109.   Defendant MTPC willfully committed no fewer than 1000 infringements of the MMAS Research Widget Code copyright when they challenged the ownership of the ownership of their Morisky Widget license and the Morisky Widget copyright.

110.   By reason of the copyright infringements described above, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

**THIRD CLAIM FOR RELIEF**
**TRADE SECRET MISAPPROPRIATION, DTSA**
**(As to Defendants Kameda, Nijon, JIMRO, University of Tokyo)**

111.   MMAS Research realleges each allegation contained in the preceding paragraphs.

112.   Plaintiff MMAS Research possesses and vigorously asserts trade secret rights in the MMAS Research Widget Code, including its proprietary scoring and coding algorithms. These trade secrets are highly valuable intellectual property assets, representing years of research and development. They are not generally known to others in the industry and provide MMAS Research with a significant competitive advantage. MMAS Research has consistently implemented robust measures to maintain the secrecy

of this information, including but not limited to strict confidentiality agreements, limited access protocols, and secure storage systems.

113.   Under the Defend Trade Secrets Act 18 U.S.C. § 1839(3) a trade secret consists of three elements: (1) information; (2) that is valuable because it is unknown to others; and (3) that the owner has attempted to keep it a secret.

114.   The trade secrets include, but are not limited to, the specific scoring and coding algorithms and test/translation editor algorithms of the MMAS Widget Code software designed to create MMAS condition and medication specific assessments in over 80 languages.

115.   Defendants Kameda, JIMRO, and MTPC were trained and certified on the use of copyrighted trade secret Morisky Widget source code scoring and coding and test editor translation algorithms. MMAS Research does not permit licensees to disclose MMAS, scoring and coding, let alone the modification of the trade secret MMAS scoring and coding criteria. Yet, Defendants misappropriated trade secret MMAS-8 specific scoring and coding and shared it with third parties.

116.   Under the Defend Trade Secrets Act, a plaintiff must prove: (1) that the plaintiff possessed a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *Inteliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020).

117.   In their Morisky Widget License, Kameda agreed not to use the Morisky Widget software for any unauthorized use.

118.   Defendants Kameda, MTPC, JIMRO, and Nihon and the University of Tokyo misappropriated MMAS Research's confidential, proprietary, and trade secret information.

119.   This misappropriation of MMAS Research's confidential, proprietary, and trade secret information was intentional, knowing, willful, and malicious.

120.   As the direct and proximate result of Defendants' misconduct, MMAS Research has suffered and, if Defendants' conduct is not stopped, will continue to suffer

severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because MMAS Research's remedy at law is inadequate, MMAS Research seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests.

121.  Plaintiff MMAS Research has been damaged by the foregoing and is entitled to an award of exemplary damages and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court Enters Judgment in Plaintiff's favor and against Defendants as follows:

A.    For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff MMAS Research's copyright in the Morisky Widget, in accordance with proof at trial;

B.    For statutory damages for copyright infringement and/or willful copyright infringement by Defendants;

C.    For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from: using the Widget Tests or the Morisky Widget copyrighted work until a license is obtained, including the maintenance on websites, posted on the Internet, or in any publication, articles, and reports described herein, or any such articles, publication, and reports in the future that use or reference the Widget Tests, MMAS-8, or the Morisky Widget;

D.    Order that Defendants file with this Court and serve upon Plaintiffs within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the injunction, as well as the steps they have taken to comply;

E.    For costs of suit incurred;

F.      For attorneys' fees;

G.      For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

H.      For such other and further relief, the Court deems just and proper.


Dated: July 10, 2025                    Respectfully submitted,

                                        **HANKIN PATENT LAW, APC**
                                        /*Marc E. Hankin*/
                                        Marc E. Hankin, Esq.
                                        Attorneys for Plaintiff,
                                        MMAS RESEARCH LLC


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all claims and issues so triable.


Dated: July 10, 2025                    Respectfully submitted,

                                        **HANKIN PATENT LAW, APC**
                                        /*Marc E. Hankin*/
                                        Marc E. Hankin, Esq.
                                        Attorneys for Plaintiff,
                                        MMAS RESEARCH LLC